No. 25-1119

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
*Appellee,*

v.

VICENTE GONZALEZ, JR., a/k/a Viejo,
*Defendant-Appellant.*

---

*On Appeal From The United States District Court
For The District Of Massachusetts*

---

## BRIEF OF DEFENDANT-APPELLANT

---

ROBERT F. HENNESSY
FIRST CIRCUIT NO. 1158975
BBO NO. 675977

SCHNIPPER HENNESSY, PC
25 BANK ROW, SUITE 2S
GREENFIELD, MA 01301
413) 325-8541, (413) 325-8692-fax
rhennessy@schnipperhennessy.com

January 23, 2026

# TABLE OF CONTENTS

Table of Contents................................................................................. i

Table of Cases.................................................................................... ii

Jurisdictional Statement....................................................................... 1

Statement of Issues............................................................................. 1

Statement of the Case.......................................................................... 2

Statement of the Facts......................................................................... 3

Summary of the Arguments................................................................. 15

Argument........................................................................................... 16

I.  THE DISTRICT COURT ERRED IN DENYING—ON ABANDONMENT GROUNDS—GONZALEZ'S MOTION TO SUPPRESS CONTRABAND SEIZED DURING THE WARRANTLESS SEARCH OF A CLOSED CONTAINER LOCATED IN THE LOCKED BASEMENT OF DEFENDANT'S APARTMENT BUILDING ................. 16

A.  Standards of Review ................................................................... 16

B.  Legal Standards ......................................................................... 17

C.  The District Court Erred in its Legal Conclusion that Gonzalez Abandonded His Reasonable Expectation of Privacy in the Closed Black and Green Canvas Bag Located when he Deposited it in the his Apartment Building's Locked Basement ..................................... 20

1.  *Gonzalez never explicitly denied or disclaimed ownership of the black and green canvas bag*........................................................... 21

2.  *The locked basement of Gonzalez's apartment building was not a location that afforded any access – let alone easy access – to the public;*

*it was a location in which Gonzalez, by agreement with the landlord and by virtue of his status as a tenant, had both authority to access and permission to store his personal belongings* .............................. 22

3. *Gonzalez did not "effectively ... tak[e] the position" in his testimony "that he abandoned whatever claim he might have asserted to control over the basement and its contents."* ................................. 25

**D. Agents' Warrantless Search Of The Closed Black And Green Canvas Bag Located In Gonzalez's Locked Basement Was Not Otherwise Justified On Ground Of Consent** .................................... 28

Conclusion ................................................................................................ 29

Certificate of Compliance ..................................................................... 32

Certificates of Service ............................................................................ 32

Addendum ................................................................................................ 33

## TABLE OF CASES

*Abel v. United* States, 362 U.S. 217 (1960) ................................... 18, 27

*California v. Greenwood*, 486 U.S. 35 (1988) ..................................... 23

*California v. Hodari D.*, 499 U.S. 621 (1991) ..................................... 23

*Camara v. Municipal Court*, 387 U.S. 523 (1967) .............................. 17

*Friedman v. United States*, 347 F.2d 697 (8th Cir. 1965) .................. 20

*Hester v. United States,* 265 U.S. 57 (1924) ....................................... 23

*Ornelas v. United States*, 517 U.S. 690 (1996) ................................... 17

*Riley v. California*, 573 U.S. 373 (2014) ............................................. 27

*United States v. Bailey*, 2009 U.S. Dist. LEXIS 15870 (D. Mass. 2009) ............ 19

*United States v. Basinski*, 226 F.3d 829 (7th Cir. 2000) .............. 16, 20-21, 25, 28

*United States v. Cofield*, 272 F.3d 1303 (11th Cir. 2001) .................................. 19

*United States v. Delgado-Perez*, 867 F.3d 244 (1st Cir. 2017) ........................... 18

*United States v. Denny*, 441 F.3d 1220 (10th Cir. 2006) .................................. 19

*United States v. Eden*, 190 Fed. Appx. 416 (6th Cir. 2006) .............................. 19

*United States v. Faust*, 853 F.3d 39 (1st Cir. 2017) ....................................... 24

*United States v. Fernandez*, 772 F.2d 495 (9th Cir. 1985) ................................. 19

*United States v. Figueroa*, 1998 U.S. App. LEXIS 26007 (1st. Cir. 1998) ........ 21

*United States v. Garzon*, 119 F.3d 1446 (10th Cir. 1997) .................................. 20

*United States v. Harrison*, 689 F.3d 301 (3d Cir. 2012) .................................... 20

*United States v. Hawkins*, 139 F.3d 29 (1st Cir. 1998) ..................................... 25

*United States v. Hunt*, 153 F.4th 858 (9th Cir. 2025) ....................................... 22

*United States v. Infante-Ruiz*, 13 F.3d 498 (1st Cir. 1994) ............................... 25

*United States v. James*, 353 F.3d 606 (8th Cir. 2003) ....................................... 19

*United States v. John*, 59 F.4th 44 (1st Cir. 2023) ............................................ 24

*United States v. Lipscomb*, 539 F.3d 32 (1st Cir. 2008) ..................................... 18

*United States v. McGregor*, 650 F.3d 813 (1st Cir. 2011) .................................. 18

*United States v. Méndez*, 2025 U.S. Dist. LEXIS 209314 (D.P.R.2025) ............ 24

*United States v. Moran*, 944 F.3d 1 (1st Cir. 2019) .......................... 16, 20, 25, 29

*United States v. Mustone*, 469 F.2d 970 (1st Cir. 1972) ..................................... 23

*United States v. Pitts*, 322 F.3d 449 (7th Cir. 2003) ........................................... 19

*United States v. Robinson*, 430 F.2d 1141 (6th Cir. 1970) ................................. 19

*United States v. Salvucci*, 448 U.S. 83 (1980) ...................................................... 18

*United States v. Sealey, 30 F.3d 7* (1st Cir. 1994) ............................................... 18

*United States v. Sinkler*, 91 Fed. App'x 226, 233 (3d Cir. 2004) ...................... 19

*United States v. Soto-Beniquez*, 356 F.3d 1 (1st. Cir. 2003)............................... 17

*United States v. Zapata*, 18 F.3d 971 (1st Cir. 1994) .................................... 21, 23

# JURISDICTIONAL STATEMENT

The United States District Court for the District of Massachusetts had jurisdiction over this action under 18 U.S.C. § 3231 because it alleged offenses against the laws of the United States, specifically 21 U.S.C. §§ 846 and 841. [RA: 25].[1]

The United States Court of Appeals for the First Circuit has jurisdiction over this action under 28 U.S.C. § 1291 because it is an appeal from a final judgment of the district court. The district court entered judgment on January 30, 2025. [Add:1]. Defendant-Appellant filed a timely notice of appeal on February 3, 2025. [RA: 277].

# STATEMENT OF ISSUES

1. Whether the District Court erred in denying—on abandonment grounds—Gonzalez's motion to suppress contraband seized during the warrantless search of a closed container located in the locked basement of his apartment building.

---

[1] This brief uses the following citation formats: portions of the record contained in the parties' Joint Appendix are cited as "RA:[Page#]"; portions of the record contained in Appellant's short addendum, appended hereto, are cited as "Add:[page#]".

**STATEMENT OF THE CASE**

On December 4, 2019 a federal grand jury sitting for the District of Massachusetts returned a superseding indictment charging Defendant-Appellant Vicente Gonzalez, Jr. ("Gonzalez") with conspiracy to distribute, and to possess with intent to distribute, 500 or more grams of cocaine (Count 2) and with possession with intent to distribute 500 or more grams of cocaine (Count 7). [RA:25-35]. Gonzalez entered pleas of not guilty on December 5, 2019. [RA:3].

On June 7, 2021, Gonzalez filed a pretrial motion to suppress all evidence obtained directly and indirectly as a result of the search of 159 Meadow Street, in Chicopee, Massachusetts as having been obtained in violation of his Fourth Amendment rights. [RA: 40-41]. The District Court (Woodlock, J.) conducted evidentiary hearings on the motion to suppress on November 17, 2022 and December 2, 2022. [RA:43, 223]. More than fourteen months later, on February 15, 2024, Judge Woodlock issued on the Court's Docket an Electronic Order denying the motion to suppress and transferring Gonzalez's case to District Court Judge Denise Casper. [RA:275-276].

On September 30, 2024, a four-day jury trial commenced (Casper, J.

presiding). [RA: 22]. On October 3, 2024, the jury returned a verdict of guilty as to Count 2 and 7. [RA: 22]. On January 28, 2025, the District Court sentenced Mr. Gonzalez to concurrent terms of 60 months' imprisonment each on Counts 2 and 7, followed by a five-year term of supervised release. [RA:14;Add:2-3]. This appeal follows.

STATEMENT OF THE FACTS

**The Search of 159 Meadow Street.**

On July 29, 2019, at approximately 11:50 a.m. the DEA, accompanied by state and local law enforcement, executed a search warrant at 159 Meadow Street, a multi-unit building in Chicopee, MA. [RA: 48]. The warrant "authorized the search of the first floor apartment at 159 Meadow Street, the garage at 159 Meadow Street and a vehicle that was parked in the vicinity of 159 Meadow Street." [RA:49].

After forcing entry into the first floor apartment, agents encountered Gonzalez standing in the kitchen, and his son, Vincente Gonzalez, II, and daughter-in-law, Lilliam Aponte, in a bedroom. [RA:50, 70]. In the ensuing search, agents discovered a laundry chute adjacent to the kitchen that appeared to lead to the basement of 159 Meadow Street. [RA:53]. When agents looked down the chute, they could see a closed black and green

3

canvas bag sitting on the floor of the basement immediately below. [RA:54].

**The Warrantless Search of the Locked Basement and Closed Containers Located Therein.**

The warrant obtained by investigators did not authorize a search of the basement of 159 Meadow Street. [RA:54, 119]. Cognizant of this fact, Special Agent Patrick Kelly ["Kelly"] consulted with an Assistant United States Attorney who advised him "to attempt to obtain consent" to conduct a warrantless search of the basement. [RA:55]. Kelly "initially . . . went to speak with Vicente Gonzalez, the defendant, in the family room, and . . . advised him that [he would] like to search the basement." [RA:55]. According to Kelly, Gonzalez stated that, "multiple occupants within that building had access to that basement but that he would give ... consent to search the basement if it was okay with the landlord." [RA:55].

Kelly then approached the landlord, Saritha Rakasi, who, by this point, had arrived and was standing outside the residence. [RA:55-56]. Kelly "informed Ms. Rakasi that Vicente Gonzalez was in the apartment and that he was providing [Kelly] with consent, given the condition that Ms. Rakasi also provided consent to search the basement." [RA:56]. *Ms.* Upon receiving this information, Rakasi consented to a search of the

basement. [RA:56]. According to Kelly, upon obtaining Rakasi's consent, and upon the advice of the U.S. Attorney's Office went back inside the residence and communicated this information to the defendant who purportedly reiterated his "consent to search the basement." Tr. 14:19-23.

Agents did not obtain written consent to search from either Gonzalez or Ms. Rakasi and did not utilize the DEA's standard consent-to-search form, which "asks to detail the location or item to be searched and then asks for a signature from the person authorizing that search." [RA:66-67].[2] Agents also did not contemporaneously audio or video record any of their interactions with Mr. Gonzalez or Ms. Rakasi during which consent to search was obtained. [RA:68,139]. No testimony was offered by Kelly, Raski, or any other witness establishing or suggesting that agents asked for, or obtained, consent from Gonzalez or Ms. Rakasi to open any closed containers found in the basement or to search the bag other agents claimed to have seen at the bottom of the chute. [RA:251].

Access to the basement of 159 Meadow Street required passage through two locked doors, one on the outside of the building and a second

---

[2] At the conclusion of the evidentiary hearing, the District Court described the Government's failure to obtain written consent through the use of a standard consent form is truly "unbelievable." [RA:161].

at the bottom of a set of stairs. [RA:59,82,87]. Only the tenants at 159 Meadow Street, and the landlord Ms. Rakasi, possessed the key necessary to access the basement. [RA: 82-83]. At the request of agents, Ms. Rakasi unlocked the doors necessary to access the basement. [RA: 59,82].

Upon entering the basement, agents discovered an additional locked area secured by a padlock. [RA:58,60,85]. When asked by SA Kelly about the locked interior door "Ms. Rakasi explained that either Vicente or his wife had asked for permission to store personal belongings in a locked portion or a portion of the basement that they were able to lock." [RA:58,86] Kelly asked Rakasi if she had a key for it and "[s]he said no, that she believed that Vicente, the defendant, had access to that lock." [RA: 58,85-86].[3] Despite not having a key, Rakasi told agents that they could have access to the padlocked area. [RA:88]. Agents "cut[] off the lock" entered and searched the locked storage area. Inside, investigators found approximately 500 grams of cocaine in various locations as well as

---

[3] Later during the hearing, Rakasi acknowledged that she "had given Mr. Gonzalez and his wife permission to use this area just for themselves" and that "this was an area that was exclusively reserved for Mr. Gonzalez." [RA:96]. Rakasi further acknowledged that it would have taken an exigency like a fire or electrical problem for her to feel as though she could have broken the lock and entered this portion of the basement without the defendant's consent. [RA:104].

suspected cutting agent. [SJA:213].

Agents conducted a search above the ceiling tiles in the basement and located clear plastic bags and one purple glove bearing suspected cocaine residue. [SJA:214]. Also in the basement, agents located the closed black and green canvas bag that had been observed through the laundry chute sitting on the basement floor. [SRA:213]. Agents opened and searched the closed bag, which was found to contain approximately 2,470 grams of suspected cocaine. [SJA:214].

**Federal Court Proceedings**

On December 4, 2019, Gonzalez was charged federally with conspiracy (Count 2) and possession with intent to distribute cocaine discovered during the warrantless search of his basement (Count 7). [RA:25-35].

On June 7, 2021, Gonzalez filed a pretrial motion to suppress all evidence obtained directly and indirectly as a result of the search of 159 Meadow Street, and in particular the warrantless basement search, as having been obtained in violation of his Fourth Amendment rights. [R.A. 40-41; Dkt. 289]. In a written opposition, the Government argued that Gonzalez's "consent to the search of his locked storage area in the

basement arrest" was valid and that "Gonzalez lacks standing to challenge the seizure of the cocaine located in the black and green canvas bag" because that bag was located in an area of the basement "common to all tenants" in which "Gonzalez has no reasonable expectation of privacy . . . ." [SRA:140-141].

The District Court (Woodlock, J.) conducted an initial evidentiary hearing on the motion to suppress on November 17, 2022. [R.A.43]. The Government presented testimony from three witnesses—Agents Patrick Kelly and Jason Salas, and landlord Saritha Rakasi—who testified generally to the circumstances surrounding the search of the basement described above.[4] The Defense presented testimony from two witnesses—Gonzalez's

---

[4] Notably, Agent Salas, who it was determined authored the only contemporaneous report of the agents' efforts to obtain consent to search the basement of 159 Meadow street, provided three demonstrably inconsistent descriptions of those efforts over the course of his sworn testimony. On direct examination Salas testified that he "was present when Special Agent Patrick Kelly had spoken to Vicente Gonzalez, Jr. and gained consent" to search the basement [RA:121-122]. On cross, Salas admitted that he possessed "no first-hand knowledge of any . . . conversations" with the defendant, "notwithstanding [his] testimony on direct examination." [RA:141]. When Salas was thereafter asked on redirect for his "best memory now here under oath as to whether . . . [he] ever witnessed a conversation between Patrick Kelly and the defendant Vicente Gonzalez" Salas stated "I don't remember" [RA:145], leading the prosecutor to observe: So now you've said three things." [RA:145].

wife Ana Alvarado and daughter-in-law, Lilliam Aponte—both of whom testified that they were present when the conversations between Kelly and Gonzalez took place and that Gonzalez did not consent to the search and indicated that he did not have keys to the basement. [68-70, 75-77]. Upon further questioning by the Court, Alvarado testified that there had been a break-in at the apartment "before this incident" during which a number of the family's keys, including keys to the basement, had been stolen. [72]. This break-in had occurred some time in January of 2019. [72].

On November 28, 2022, Gonzalez filed a supplemental Memorandum of Law in Support of his Motion to Suppress arguing evidence presented at the November 17th evidentiary hearing, particularly viewed in light of the deeply problematic testimony of Agent Sala, was insufficient to sustain the Government's "'burden to prove valid, voluntary consent' to search any portion of the basement including but not limited to the area to which the defendant had exclusive access." [RA:196]. Alternatively, Gonzalez argued that the any consent purportedly obtained by the agents permitting them to enter and search the common area of the basement (and to seize contraband they discovered there in plain view) did not authorize them to explore the contents of any closed containers located therein. [RA:206]. On

the same day, November 28, 2022, the Government filed a Supplemental Opposition asserting that "Defendant's assertions of an expectation of privacy in both areas of the basement are not protected by Fourth Amendment" where Gonzalez did not personally "make any factual assertion of an expectation of privacy in any particular place, item, or object" and where tenants generally "lack[] a reasonable expectation of privacy in the common areas of an apartment building." [RA:215].

The District Court conducted second hearing on the motion to suppress on December 5, 2022. [RA:223]. At the outset of the hearing, the Court asked whether there was "any basis in the record for the landlord indicating that she could have gone into the bag by herself?" [RA:227]. The Government conceded there was not. [RA:227]. It also affirmed as a "fair assertion" that the "one person who ... got the government into the basement, it is explicit that she didn't have authority to look at that bag by herself." [RA:227]. Pivoting to the question of standing, the Government argued that, in order for Gonzalez to establish standing to object to the opening of the bag: "he has to say that, 'I have an expectation of privacy in that bag,' and he didn't." [RA:229]. Asked by the Court whether, in order to have standing to object on Fourth Amendment grounds, Gonzalez "need

only say that, 'My stuff was in that bag[,]'" the Government responded "I think he has to, yeah, I do." [RA:229-230]. Noting that "the standing issue" was on "pretty thin ice, but I don't want a lousy record on it either" the Court invited defense counsel to present Gonzalez's testimony on that point. [RA:237].

After a short recess, the Gonzalez was sworn in as a witness. [RA:238]. He testified on direct examination that on July 29, 2019, prior to the arrival of police at his apartment, he had possession of the bag that was later found in the basement of 159 Meadow Street, that it was his desire "that nobody else have access to the contents of it" and that at some point he put the bag "down in the basement, the chute to the basement that [he] had access to." [RA:238-239]. On cross, Gonzalez stated that he placed the bag down the laundry chute "[a]s soon as I heard [agents] kick in the door" and that the chute went toward the part of the basement where the third floor tenants had their washing machine. [RA:240]. Gonzalez testified that he did not remember at the time of the hearing in December of 2022 what the bag looked like and did know what it contained. [RA:241]. Gonzalez denied telling agents "they could search the basement but they had to check first with the landlord" but confirmed that he "hadn't had access to

the basement for more than six months" on account of keys having been stolen. [RA:242].

Following Gonzalez's testimony, the Court pointedly asked the Government: "how can I not find that the defendant had an expectation of privacy in that object he threw down there and in the locked area?" [RA:243]. In response, the Government argued "that this hearing violates Rule 12. I think the government was entitled to notice of the defendant's position." [RA:243]. The Court provided the Government "some time to dispel what I consider to be unwarranted surprise about the question of whether or not this defendant had standing with respect to those items." [RA:245].

On December 13, 2022, Government filed a Second Supplemental Opposition To Defendant's Motion To Suppress, in which it indicated that:

> After review of the transcript of the hearing held on December 5, 2022, and further consideration of caselaw, the government will not use at trial (1) items seized from inside the ceiling tiles of the basement common area, and (2) items seized from inside the padlocked area of the basement. The United States, however, continues to oppose suppression of the approximately 2,500 grams of cocaine seized from inside the bag found sitting on the floor of the common area of the basement.

[RA:258]. In its supplemental filing, the Government conceded that "[i]t was plainly within the discretion of the Court" to admit Gonzalez's testimony about his expectation of privacy in the closed bag located during the agents' search of the basement and made no objection to Gonzalez's standing to challenge the warrantless search of that bag on Fourth Amendment grounds. [RA:257-258]. Rather, the Government argued that Gonzalez's "recent testimony significantly bolsters the government's arguments regarding consent and abandonment." [RA:258].

On December 20, 2022, Gonzalez filed a Second Supplemental Memorandum of Law in Support of Motion to Suppress. [RA:264]. On the issue of consent, Gonzalez argued "the evidence offers no support for a finding that the defendant granted agents unfettered access to the basement of 159 Meadow Street" or obtained valid consent to open or search the closed black and green canvas bag. [RA:268-271]. As to abandonment, Gonzalez argued: "the Government has not come close to meet its burden of proving a reasonable person in the searching agents' position would have believed that the defendant relinquished his property interest in the bag in a locked basement at the bottom of his laundry chute." [RA:273].

Following the filing of Gonzalez's Second Supplemental Memorandum of Law on December 20, 2022, his Motion to Suppress remained under advisement for approximately fourteen months. [R.A.:15-16]. On February 15, 2024, Judge Woodlock issued a 462-word Electronic Order denying the motion, stating, in relevant part:

> [T]he only evidence subject to a suppression dispute is the "approximately 2,500 grams of cocaine taken from the closed bag found in the [basement] common area" at the bottom of the laundry chute passing through the Defendants apartment.
>
> I find the testimony offered in the several hearings regarding this motion though ambiguous to some degree establishes that the Defendant, who had not had a key for the basement area for some six months prior to the search, gave effective oral consent to the landlady's choice whether to open the basement area for examination by the government.
>
> Because the Defendant testified that he did not have access to the basement at the time of the search and for the one−half year before, he effectively has taken the position that he abandoned whatever claim he might have asserted to control over the basement and its contents.
>
> The totality of the circumstances surrounding deposit of the closed bag and its contents in the laundry chute might also be styled as an abandonment specifically because according to his testimony, Mr. Gonzalez disposed of the closed bag knowing the government agents had entered his apartment to search it but before they were in a position to observe his actions. This constituted a forfeiture of whatever expectation of privacy he may have had in the bag and its contents.

[RA:275].

**SUMMARY OF THE ARGUMENT**

The District Court erred in denying—on abandonment grounds—Gonzalez's motion to suppress contraband seized during the warrantless search of a closed container located in the locked basement of defendant's apartment building. When conducting an assessment of whether property has been abandoned, Courts look at the totality of the circumstances, paying particular attention to explicit denials of ownership and to any physical relinquishment of property. The circumstances in this case stand in stark contrast to others in which this Court or others have found the presence of Abandonment for Fourth Amendment purposes. Not only did Gonzalez never explicitly disclaim his privacy interest in the closed black and green canvas bag searched by police, but that closed container was deposited by Gonzalez and located by police in a location that was decidedly not public and where Gonzalez had authority and permission to access and to store personal belongings. This undisputed authority and permission gave Gonzalez an objectively reasonable expectation of privacy in that bag independent of its immediate surroundings. *See United States v. Moran*, 944 F.3d at 5 n.2. Moreover and contrary to the legal conclusion of the District Court, Gonzalez's undisputed *authority* to access the area was

15

in no way diminished by disputed testimony concerning Gonzalez's temporary and remediable loss of keys necessary to do so. Considered in their totality, the objective circumstances present in this case would not lead "a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." *Basinski*, 226 F.3d, at 837. Therefore, the District Court erred in denying, on abandonment grounds, Gonzalez's motion to suppress the contraband seized during the warrantless search of the closed black and green canvas bag.

## ARGUMENT

**I. THE DISTRICT COURT ERRED IN DENYING—ON ABANDONMENT GROUNDS—GONZALEZ'S MOTION TO SUPPRESS CONTRABAND SEIZED DURING THE WARRANTLESS SEARCH OF A CLOSED CONTAINER LOCATED IN THE LOCKED BASEMENT OF DEFENDANT'S APARTMENT BUILDING.**

### A. Standards of Review

In reviewing the denial of a motion to suppress "[t]his court reviews the district court's findings of fact for clear error and its ultimate Fourth Amendment conclusion de novo. *United States v. Soto-Beniquez*, 356 F.3d 1, 36 (1st. Cir. 2003) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996). A finding of abandonment is a "Fourth Amendment conclusion" that is

reviewed de novo review. *Id.*

**B.     Legal Standards**

The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, police must obtain a warrant before searching or seizing private property without consent. *Camara v. Municipal Court*, 387 U.S. 523, 528-29 (1967). "[A] search done without a warrant supported by probable cause is presumptively unreasonable unless an exception to the warrant requirement applies." *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011).

"On a motion to suppress evidence seized on the basis of a warrantless search, the presumption favors the defendant, and it is the government's burden to demonstrate the legitimacy of the search." *United States v. Delgado-Perez*, 867 F.3d 244, 250 (1st Cir. 2017) (internal quotation marks and citation omitted). At the same time, a defendant moving to suppress evidence, "carries the burden of establishing that he had a reasonable expectation of privacy with respect to the area searched or . . . the items seized." *United States v. Lipscomb*, 539 F.3d 32, 35-36 (1st Cir. 2008) (citing *United States v. Salvucci*, 448 U.S. 83, 91-92 (1980)).

Under the so-called "Abandonment" doctrine, a defendant said to originally have a reasonable expectation of privacy in the area searched or the item seized, may be deemed to have forfeited such expectation of privacy by incurring in voluntary acts of abandonment. *See Abel v. United States*, 362 U.S. 217, 241 (1960) ("There can be nothing unlawful in the Government's appropriation of . . . abandoned property."); *see also United States v. Sealey, 30 F.3d 7, 10* (1st Cir. 1994) ("when an individual abandons property, he forfeits any reasonable expectation of privacy in it, and consequently police may search it without a warrant").

This Court has yet to set out an express framework for assessing claims of abandonment in the Fourth Amendment context, which identifies allocates the burden of proof. The Courts of Appeal in other Circuits who have addressed these questions (as well as the District Courts in this Circuit) unanimously hold that the burden of proving abandonment lies with the government[5], with the majority also holding that the correct

---

[5] *United States v. Denny*, 441 F.3d 1220, 1226 (10th Cir. 2006) ("the burden is on the Government to establish abandonment by a preponderance of the evidence"); *United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003) (same); *United States v. James*, 353 F.3d 606, 616 (8th Cir. 2003) ("At the suppression hearing, the government bore the burden of establishing that Mr. James had abandoned the discs."); *United States v. Sinkler*, 91 Fed. App'x 226, 233 n.10 (3d Cir. 2004) (unpublished opinion) ("The Government, of course,

standard of proof is preponderance of the evidence.[6]

In *United States v. Moran*, 944 F.3d 1, 5 n.2 (1st Cir. 2019) (reaffirming the longstanding principle that "a person generally has an expectation of privacy in items he places in a closed container"), this Court drew specific attention to three pages of a Seventh Circuit decision wherein that court

---

will also bear the burden of proving all relevant exceptions to the warrant requirement and any other grounds for a permissible search that may apply here, including the abandonment of the backpack. . . ."); *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001) ("[w]hile the individual whose property was searched bears the burden of proving a legitimate expectation of privacy in the items searched, the burden of proving abandonment is on the government"); *United States v. Eden*, 190 Fed. Appx. 416, 423 (6th Cir. 2006) (unpublished opinion) ("the government has the burden of establishing [abandonment] by a preponderance of the evidence"); *United States v. Fernandez*, 772 F.2d 495, 499 (9th Cir. 1985) ("the Government had the burden of establishing abandonment"); *United States v. Robinson*, 430 F.2d 1141, 1143 (6th Cir. 1970) (abandonment "must be clearly shown by the party asserting it"). *Accord, United States v. Méndez-Rodríguez*, 2025 U.S. Dist. LEXIS 209314, *28 (D.P.R. October 22, 2025); *United States v. Bailey*, 2009 U.S. Dist. LEXIS 15870, *4 (D. Mass. February 26, 2009).

[6]Three Courts of Appeal—those for the Third, Eighth and Tenth Circuits—have required proof of abandonment by a heightened "clear and convincing evidence" standard. *See United States v. Harrison*, 689 F.3d 301, 307 (3d Cir. 2012) (requiring that "proof of intent to abandon . . . be established by clear and unequivocal evidence."); *United States v. Garzon*, 119 F.3d 1446, 1450 (10th Cir. 1997) (evaluating whether the defendant "objectively evidenced an abandonment intent by clear and unequivocal physical acts"); *Friedman v. United States*, 347 F.2d 697, 704 (8th Cir. 1965) ("Proof of abandonment must be made by the one asserting it by clear, unequivocal and decisive evidence.").

provided the following cogent distillation of this majority view on the law of abandonment:

> To demonstrate abandonment, the government must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized. Because this is an objective test, it does not matter whether the defendant harbors a desire to later reclaim an item; we look solely to the external manifestations of his intent as judged by a reasonable person possessing the same knowledge available to the government agents.

*United States v. Basinski*, 226 F.3d 829, 837 (7th Cir. 2000). *See also United States v. Figueroa,* 1998 U.S. App. LEXIS 26007, *10-11 (1st. Cir. 1998) (unpublished opinion) ("[d]etermining whether certain property has been 'abandoned' involves an objective test 'under which intent may be inferred from words spoken, acts done, and other objective facts.'").

**C.    The District Court Erred in its Legal Conclusion that Gonzalez Abandonded His Reasonable Expectation of Privacy in the Closed Black and Green Canvas Bag Located when he Deposited it in the his Apartment Building's Locked Basement.**

When conducting an assessment of whether property has been abandoned, Courts "look at the totality of the circumstances" "but pay particular attention to explicit denials of ownership and to any physical relinquishment of property." *Basinski, 226 F.3d, at 837* (internal quotation

omitted). *Accord United States v. Zapata*, 18 F.3d 971, 978 (1st Cir. 1994) ("One who abandons ownership forfeits any entitlement to rights of privacy in the abandoned property, and one who disclaims ownership is likely to be found to have abandoned ownership.") (citation omitted)). Here, as discussed below, Gonzalez never explicitly disclaimed a privacy interest in the closed black and green canvas, which was located in an area—the locked basement of Gonzalez's apartment building—that was plainly not accessible to the public and in which Gonzalez, by agreement with the landlord and by virtue of his status as a tenant, had both authority to access and permission to store his personal belongings. In these circumstances, the District Court's legal finding of abandonment was error.

1.   *Gonzalez never explicitly denied or disclaimed ownership of the black and green canvas bag.*

It is important to note at the outset that the District Court made no finding that Gonzalez ever explicitly denied or disclaimed ownership of the closed black and green canvas bag located in the locked basement of his apartment building on July 29, 2019. It is equally important to acknowledge that the evidence before the Court did not support such a finding. Not a single witness testified to any such denial or disclaimer by Gonzalez. As acknowledged by the Government below, agents never asked Gonzalez for

permission to look in the bag only whether they could look in the basement. [RA:251]. In his testimony establishing his subjective expectation of privacy, Gonzalez specifically testified that he had possession of the bag prior to the arrival of police at his apartment, that it was his desire "that nobody else have access to the contents of it" and that at some point he put the bag "down in the basement, the chute to the basement that [he] had access to." [RA:238-239].[7] In short, this is not a case a voluntary denial of ownership suggests or demonstrates sufficient intent of disassociation to prove or support a finding of abandonment. *Compare Zapata*, 18 F.3d at 978.

2. *The locked basement of Gonzalez's apartment building was not a location that afforded any access – let alone easy access – to the public; it was a location in which Gonzalez, by agreement with the landlord and by virtue of his status as a tenant, had both authority to access and permission to store his personal belongings.*

It is well established that the voluntary abandonment of property in a location that affords easy access to the public—whether discarded during a police pursuit or disposed of as trash—may constitute "a renunciation of any 'reasonable' expectation of privacy in the property abandoned." *United States v. Mustone*, 469 F.2d 970, 972 (1st Cir. 1972). *See generally,; Cal. v.*

---

[7] As noted above, this testimony led the Court to ask the Government: "how can I not find that the defendant had an expectation of privacy in that object he threw down there and in the locked area?" [RA:243].

*Hodari D.*, 499 U.S. 621, 629 (1991) (considering items tossed in public during police pursuit); *California v. Greenwood*, 486 U.S. 35 (1988) ("garbage left for collection outside the curtilage of a home") *Hester v. United States,* 265 U.S. 57, 58 (1924) (items left in open field). In this case, however, it is beyond dispute that the locked basement of Gonzalez's apartment building was *not* a location that afforded any access – let alone easy access – to the public. Access to the basement of 159 Meadow Street required passage through two locked doors, one on the outside of the building and a second at the bottom of a set of stairs. [RA:59,82]. Only the tenants at 159 Meadow Street, and the landlord Ms. Rakasi, possessed the key necessary to access the basement. [RA:82-83].

Crucially, the locked basement of Gonzalez's apartment building was also not an area in which Gonzalez was "without permission or agreement" to access or to store belongings. *See and compare United States v. John*, 59 F.4th 44, 49 (1st Cir. 2023) (no reasonable expectation of privacy in closed container left "for a prolonged period without permission or agreement in a home in which he was entirely unwelcome and had no right to enter"); *United States v. Faust*, 853 F.3d 39, 45, 47 n.5 (1st Cir. 2017) (deeming abandoned a backpack deposited in neighbor's apartment that

defendant had no "right to be in"). To the contrary, by agreement with the landlord and by virtue of his status as a tenant, Gonzalez had both authority to access and permission to store his personal belongings in the apartment building's locked basement. [RA:82-83,86,96,103-105]. Notwithstanding the fact that the basement was a "common area" accessible to multiple tenants as well as the landlord, *see United States v. Hawkins,* 139 F.3d 29, 32-33 (1st Cir. 1998), Gonzalez's undisputed authority and permission to access and store belongings there gave him an objectively reasonable expectation of privacy in the closed black and green canvas bag that was not dependent on such expectation in the common area itself. See *United States v. Moran*, 944 F.3d at 5 n.2 (holding that the defendant had an objectively reasonable expectation of privacy in his black trash bags kept inside his sister's storage unit with her permission); *United States v. Infante-Ruiz*, 13 F.3d 498, 501-02 (1st Cir. 1994) (defendant had an objectively reasonable expectation of privacy in his briefcase placed with permission in another's car trunk).

In these circumstances, Gonzalez's act of putting his closed black and green canvas bag "down in the basement, the chute to the basement that [he] had access to"—an area in which he retained an objectively reasonable

24

expectation of privacy in that bag independent of its immediate surroundings, see infra *Moran*, 944 F.3d at 5 n.2; *Infante-Ruiz*, 13 F.3d at 501-02—would not lead "a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." Basinski, 226 F.3d, at 837. The District Court's legal conclusions that that this act "might also be styled as an abandonment" and "constituted a forfeiture of whatever expectation of privacy he may have had in the bag and its contents" are erroneous.

3. *Gonzalez did not "effectively ... tak[e] the position" in his testimony "that he abandoned whatever claim he might have asserted to control over the basement and its contents."*

Citing no authority, the District Court posited in its Order the legal conclusion that "Because the Defendant testified that he did not have access to the basement at the time of the search and for the one-half year before, he effectively has taken the position that he abandoned whatever claim he might have asserted to control over the basement and its contents." [RA:58, 275]. Gonzalez testified that he had been without the keys necessary to access the locked basement for a period of approximately six months on account of those keys having been stolen from his family during a break-in. [RA:242, 243]. As an initial matter (and as noted by the

Government below), this testimony was contradicted by that of the landlord, Ms. Rakasi, who testified that Gonzalez "had a key to the basement" and that "[a]ll the tenants in the building have the keys." [RA:82, 99, 262]. In any event, even if credited, Gonzalez's testimony addressing access to the *means* of accessing the apartment building's locked the basement (i.e. the keys) has no bearing on his undisputed *authority* to do so and to store his personal belongings there. The persistence of such authority and permission was amply established through the testimony of both Gonzalez and the landlord Rakasi. [RA:82-83,86,96,103-105, 242]. This is plainly not a situation of premises that had been vacated or where such authority had lapsed. *See and compare, Abel v United States* 362 U.S. 217, 241 (1960) (items "found in the room's wastepaper basket, where petitioner had put them while packing his belongings and preparing to leave" were admissible because "at the time of the search . . . [t]he hotel then had *the exclusive right to its possession*") (emphasis added). Nothing in law or logic supports the District Court's novel legal conclusion that the mere involuntary loss (or in this case theft) of keys obtained as part of an ongoing lease of property might constitute the type of affirmative renunciation of privacy rights necessary to sustain a finding of

abandonment. *Cf. United States v. Hunt*, 153 F.4th 858, 867 (9th Cir. 2025) (citing *Riley v. California*, 573 U.S. 373, 403 (2014)) ("[s]omeone who loses her cellphone through theft or negligence likely does not intend to release to the public details of her personal life *any more than someone who loses a house key intends to invite the public to rummage through her home*.) (emphasis added)).

In sum, the present case stands in stark contrast to others in which this Court has found the presence of Abandonment for Fourth Amendment purposes. Not only did Gonzalez never explicitly disclaim his privacy interest in the closed black and green canvas bag searched by police, that closed container was deposited by Gonzalez and located by police in a location that was decidedly not public and where Gonzalez had authority and permission to access and to store personal belongings. This undisputed authority and permission gave Gonzalez an objectively reasonable expectation of privacy in that bag independent of its immediate surroundings. Contrary to the legal conclusion of the District Court, Gonzalez's undisputed *authority* to access the area was in no way diminished by disputed testimony concerning Gonzalez's temporary and remediable loss of keys necessary to do so. These circumstances,

considered in their totality, would not lead "a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized." *Basinski*, 226 F.3d, at 837. Therefore, the District Court erred in denying, on abandonment grounds, Gonzalez's motion to suppress the contraband seized during the warrantless search of the closed black and green canvas bag.

**D.  Agents' Warrantless Search Of The Closed Black And Green Canvas Bag Located In Gonzalez's Locked Basement Was Not Otherwise Justified On Ground Of Consent.**

The *only* justification the District Court cited for the Government's warrantless search of the closed black and green canvas bag is abandonment. [ADD:7; RA:275]. While finding that the evidence "though ambiguous" was sufficient to establish that Gonzalez "gave effective oral consent to the landlady's choice whether to open the basement area for examination by the government" *id.*, the District Court made no finding and evinced no suggestion that such consent permitted the Government's warrantless search of the closed black and green canvas bag. Nor does the record support such a finding. As bluntly posited by the Court (and confirmed by the Government) at the December 7, 2022 evidentiary hearing, there was not "any basis in the record for the landlord indicating

that she could have gone into the bag by herself[.]" [RA:227 (affirming as a "fair assertion" that the "one person who ... got the government into the basement, it is explicit that she didn't have authority to look at that bag by herself.")]. [RA:227]. Therefore, any consent obtained from or through Mr. Rakasi to search the locked basement did not authorize them to explore the contents of any closed containers therein. Moran, 944 F.3d at 5 ) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)) (holding that a third party's ability to consent to the "search another's effects" hinges on whether "the third party 'possesse[s] common authority over . . . [the] effects sought to be inspected'").

## CONCLUSION

For the foregoing reasons, Mr. Gonzalez respectfully requests that the Court reverse the district court's denial of his motion to suppress, vacate his conviction, and remand for further proceedings.

Respectfully submitted,
APPELLANT VICENTE GONZALEZ

By /s/ Robert F. Hennessy
ROBERT F. HENNESSY
FIRST CIRCUIT NO. 1158975
BBO NO. 675977

SCHNIPPER HENNESSY, PC
25 BANK ROW, SUITE 2S
GREENFIELD, MA 01301
(413) 325-8541
FAX: (413) 325-8692
*rhennessy@schnipperhennessy.com*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

*Certificate of Compliance with Type-Volume Limit,*
*Typeface Requirements, and Type Style Requirements*

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **6,409** words (according to Microsoft Word's word count feature), excluding the parts of the brief exempted by Fed. R. App. P. Rule 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. Rule 32(a)(5) and the type style requirements of Feb. R. App. P. Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, using Microsoft Word in size 14 font, Book Antiqua type style.

/s/ Robert Hennessy
Robert Hennessy
*Attorney for Defendant-Appellant*

January 23, 2026

## CERTIFICATE OF E-FILING AND SERVICE

I certify that on January 23, 2026, the foregoing document was electronically filed with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Donald C. Lockhart
Assistant U.S. Attorney, Chief of Appeals
Office of the U.S. Attorney for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

/s/ Robert Hennessy
Robert Hennessy
*Attorney for Defendant-Appellant*

## CERTIFICATE OF SERVICE OF JOINT APPENDIX

The undersigned certifies that a true and accurate copies of the parties' Joint Appendix and Sealed Joint Appendix were served upon Donald C. Lockhart, Assistant U.S. Attorney, Chief of Appeals, Office of the U.S. Attorney for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Suite 9200, Boston, Massachusetts 02210.

/s/ Robert Hennessy
Robert Hennessy
*Attorney for Defendant-Appellant*

January 23, 2026

No. 25-1119

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
*Appellee,*

v.

VICENTE GONZALEZ, JR., a/k/a Viejo,
*Defendant-Appellant.*

*On Appeal From The United States District Court
For The District Of Massachusetts*

## ADDENDUM

1. Judgment of the District Court, Case No. 19−cr−10421, dated January 30, 2025 ................................................................................. Add. 1

2. Electronic Order Denying Defendant's Motion to Suppress, dated February 15, 2024 ........................................................................ Add. 9

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| VINCENTE GONZALEZ | Case Number: **1: 19 CR 10421 - 13 - DJC** |
| | USM Number: 02031-138 |
| | Luke Ryan, Esq. |
| | Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☑ was found guilty on count(s)    2s & 7s
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC § 846 | Conspiracy to Distribute and to Possess with Intent to Distribute 500 Grams or More of Cocaine | 12/05/19 | 2s |
| 21 USC § 841(a)(1) | Possession with Intent to Distribute 500 Grams or More of Cocaine | 07/29/19 | 7s |

        The defendant is sentenced as provided in pages 2 through _____6_____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____  ☐ is  ☐ are dismissed on the motion of the United States.

        It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

1/28/2025

Date of Imposition of Judgment

_Denise J. Casper_
Signature of Judge

The Honorable Denise J. Casper

Judge, U.S. District Court

Name and Title of Judge

1/30/2025

Date

**ADD:1**

AO 245B (Rev. 11/16)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT: VINCENTE GONZALEZ
CASE NUMBER: **1: 19  CR  10421  - 13  - DJC**

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:      60    month(s)

This term consists of terms of 60 months on Counts 2s and 7s, such terms to be served concurrently

☑  The court makes the following recommendations to the Bureau of Prisons:

the defendant be designated to FMC Devens, or, if not appropriate, an institution commensurate with security where the Bureau of Prisons can afford appropriate medical care for the defendant's documented medical needs.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at  _____  ☐ a.m.  ☐ p.m.  on  _____  .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on  _____  .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on  _____  to  _____

a  _____  , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By  _____
DEPUTY UNITED STATES MARSHAL

**ADD:2**

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
        Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT:  VINCENTE GONZALEZ
CASE NUMBER:  **1: 19 CR 10421 - 13 - DJC**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :
    5 year(s)

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**ADD:3**

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
                        Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___6___

DEFENDANT: VINCENTE GONZALEZ
CASE NUMBER:    **1: 19  CR  10421   - 13   - DJC**

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature    _____    Date _____

**ADD:4**

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
                        Sheet 5 — Criminal Monetary Penalties

Judgment — Page __5__ of __6__

DEFENDANT: VINCENTE GONZALEZ
CASE NUMBER: **1: 19  CR  10421   - 13   - DJC**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 200.00 | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**ADD:5**

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
                        Sheet 6 — Schedule of Payments

Judgment — Page __6__ of __6__

DEFENDANT:   VINCENTE GONZALEZ
CASE NUMBER:    **1: 19  CR  10421   - 13   - DJC**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑   Lump sum payment of $ __200.00__   due immediately, balance due

    ☐   not later than _____ , or
    ☐   in accordance with  ☐  C,   ☐  D,   ☐  E, or   ☐ F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____ over a period of
    _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
    term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
    imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

**ADD:6**

| | | |
|---|---|---|
| 02/15/2024 | 786 | Judge Douglas P. Woodlock: ELECTRONIC ORDER entered DENYING 289 Defendant's Motion to Suppress as to Vicente Gonzalez (13): The Defendant Vincente Gonzalez's motion to suppress has now been framed in a fashion which makes the Defendant's burden at this stage insurmountable, in light of the government's representation that it will not use at trial two of the three sources of challenged evidence: "(1) items seized from inside the ceiling tiles of the basement common area, and (2) items seized from inside the padlocked area of the basement." Thus, the only evidence subject to a suppression dispute is the "approximately 2,500 grams of cocaine taken from the closed bag found in the [basement] common area" at the bottom of the laundry chute passing through the Defendants apartment.<br><br>I find the testimony offered in the several hearings regarding this motion though ambiguous to some degree establishes that the Defendant, who had not had a key for the basement area for some six months prior to the search, gave effective oral consent to the landlady's choice whether to open the basement area for examination by the government.<br><br>Because the Defendant testified that he did not have access to the basement at the time of the search and for the one-half year before, he effectively has taken the position that he abandoned whatever claim he might have asserted to control over the basement and its contents.<br><br>The totality of the circumstances surrounding deposit of the closed bag and its contents in the laundry chute might also be styled as an abandonment specifically because according to his testimony, Mr. Gonzalez disposed of the closed bag knowing the government agents had entered his apartment to search it but before they were in a position to observe his actions. This constituted a forfeiture of whatever expectation of privacy he may have had in the bag and its contents.<br><br>I find that the search warrant was premised on sufficient nexus between the evidence sought and the location. Probable cause for the search was adequately established in the search warrant affidavit. The Defendant's contentions that the affidavit contained misrepresentations both by reckless disregard for the truth and material omissions of fact regarding the basis for probable cause is unavailing because the Defendant has not demonstrated the requisite scienter to misrepresent and because "the totality of the revealed circumstances make out a showing of probable cause, even with false facts stripped away, inaccurate facts corrected, and omitted facts included." *United States v. Barbosa,* 896 F.3d 60, 69 (1st Cir. 2018). |

|  |  | I find it to be in the interests of justice and the efficient performance of the work of the court to transfer the case against the Defendant Vicente Gonzalez to Judge Casper to whom all other aspects of this case and its co-defendants have previously been transferred to her with her consent and with the approval of the Chief Judge. (Beatty, Barbara) (Entered: 02/15/2024) |